Please rise. This court is now in session. You may be seated. 311740 consolidated with 311741. I'm the Chief of the State of Illinois, appellant by Nadia Chaudhry v. Nathan Benavidez, athlete by Nathan Miller and April Williams, athlete by Nathan Miller. Ms. Chaudhry, are you ready for round two? Come on up. May it please the court. Defendant was charged with unlawful possession of a controlled substance with intent to delivery and unlawful possession of a controlled substance. A motion to cross arrest and suppress evidence was filed on June 22, 2011, and the trial judge granted the motion on September 19, 2011, based on Hackett. The Supreme Court has reversed a judgment on the appellate court decision in Hackett, and the people respectfully request at this time that the court reverse the order of the trial judge granting defendant's motion to cross arrest and suppress evidence based on the Hackett decision. Are there any questions? Thank you. And Mr. Boyd, are you going first? And then Mr. Mueller. Good morning, Your Honors. Andrew Boyd from the State Appellate Attorney's Defender's Office on behalf of Defendant April Williams. If it please the court, counsel, the first thing we would like to talk about very briefly is the State's motion to add authority as far as the Rowland case goes. The State presented its argument in its brief that the stop was not unreasonably prolonged. The State went beyond the Hackett argument and brought up on its own initiative the argument that the stop was unreasonably prolonged. Both Ms. Williams and Mr. Benavides responded to that argument in their briefs in fairly detailed arguments, and the State, if it would have wanted to, certainly could have addressed this in a reply brief, but the State chose not to do so. This argument was something that was presented to the trial court. It was fully developed with facts on whether the stop was unreasonably prolonged. It was fully developed before the trial court, and the parties argued the issue before the trial court, although the court did not address it. And we would also point out that it's well established that this honorable court can't confirm a circuit court suppression ruling for any reason that appears in the record. And I've cited some cases to that effect in my response to the State's motion. So we argue that this court should address that issue. As far as the issue of whether the stop was unreasonably prolonged, we would certainly concede, after the Supreme Court's decision in Hackett, that this trooper's stop of Ms. Williams' vehicle was proper. The argument going forward from that point is, what is Trooper Matos allowed to do in terms of his investigation at that point? And also, perhaps more importantly, how long is Trooper Matos allowed to investigate this alleged lane-use violation? The essence of our argument, and what I'd like to emphasize at the very start here, is that Trooper Matos essentially was wasting time until his fellow officer could arrive with the drug-sniffing dog. Now, under Hackett, Hackett says that an investigatory stop is justified when an officer sees a lane-use violation for no apparent reason. Now, what under Hackett is Trooper Matos allowed to do at that point? What Hackett says is that Trooper Matos is allowed to investigate into the reasons for this alleged lane-use violation. Trooper Matos did that, and he did so very quickly. He asked Ms. Williams, what happened here? Ms. Williams said, I was distracted. If I recall correctly, I think she said she was on the cell phone. I may have temporarily veered over the lane line and asked what happened. At that point, Trooper Matos has all the information that he needs. He's completed his investigation into this alleged lane-use violation. And at that point, under the Koutsakis case and some other cases that I've cited in my brief, what Trooper Matos is allowed to do is he's allowed to ask her for a driver's license, her insurance card, he can run a warrant check, and he can obviously issue her a ticket for this lane-use violation. Now, he testified that he could have obtained information via the use of his onboard computer about her driver's license and her insurance within 30 seconds. And again, he could have run a warrant check very, very quickly. And he also testified that he could have written Ms. Williams a ticket for the lane-use violation without asking her to exit the vehicle. Instead of that, he pulls her out of the car, he places her in the squad car, he questions her extensively about her trip, he runs a full background check on all the individuals in the car. And my co-counsel, Mr. Mueller, is going to talk more about this full background check. In other words, he went way, way, way beyond the bounds of what he's allowed to do under Hackett. So this court ought to look at this stop as a whole. Yes, we would concede that the initial activity, the stop of the vehicle, was proper under Hackett. But the problem is, from our point of view, is that what happened after that took much, much, much too long. The duration of the stop went well beyond what it should have done in order to complete this. Now, the Baldwin case is directly on point here. And if Your Honor would allow me, I'd like to talk a little bit about the two-prong test that the Baldwin case explains. The first question that this court should ask is whether the stop was unreasonably prolonged past the time that it was reasonably required to complete it. In this case, this is a very easy question to answer. In fact, Krupa-Montos basically admitted that the stop went way past his time frame when he testified. And he did so, at least on this issue, honestly. He said he could have run a background check on Williams. He could have checked her license. He could have done this very quickly, basically in 30 seconds, 30 seconds or less. And he could have written her a ticket without pulling her out of the car. Again, as we said, he wastes time by pulling her out of the car, engaging in all these different background checks. And it takes him approximately 15 minutes to do these things, at which point the drug-sniffing dog appears. And at that point, and I think this is very telling to point out, at that point, Krupa-Montos stops writing the warrant ticket. He stops writing the warrant ticket, and this proceeds into a drug investigation. Now, the second question that this Honorable Court should ask, under Baldwin, is whether there's specific articulable facts that would have led Montos to believe that Ms. Williams was committed a crime. And he didn't have any facts in this case, Your Honors. He testified that his attention was drawn to the vehicle because there was out-of-state license plates and because there was a rental sticker on the back of the car. Now, we cited the Ortiz case in our brief, and it's directly on point here. If that is reasonable suspicion to suspect somebody of drug-related activity, then that puts a tremendous amount of law-abiding citizens at risk for virtually random seizures. Thank you. And before I wrap up, the other thing I'd like to very briefly point out is that one of the things that Krupa-Montos also used to try to justify the prolonged nature of the stop was the fact, as he saw it, that Ms. Williams appeared to be under the influence of narcotics. And there's a couple things that are relevant here. First of all, in the DVD of the stop, there's no obvious indication that Ms. Williams was under the influence of narcotics. And the second thing that I think is even more important to point out is that he didn't do any sort of investigation into any type of impaired driving. He didn't have her walk or run. He didn't have her do any of these types of things that officers do in TIPIT or the UIRS. So for Krupa-Montos to assert that Ms. Williams' apparent impairment was somehow a reason to prolong the stop is just not a good reason. And the last thing I'd like to say before I turn this over to my co-counsel, and I'd like to emphasize this again, is that yes, we can see the initial stop is justified, but everything that happened after that, all these things that happened after that, was simply Krupa-Montos wasting time in order so the drug-sniffing dog could arrive. Hackett doesn't allow for that. None of the cases that we cited in our brief allow for that. Thank you for your time, Your Honor. Any questions? I do have a question. How do we deal with the question of whether or not it was unreasonably prolonged when Krupa-Montos appears to have testified that the stop was a subterfuge because he really believed that these were drug traffickers? Well, Krupa-Montos was honest about that. And he said this was a drug investigation from the start. And from our point of view, that's precisely the problem with this case. And that's why we believe that Your Honor should find that the stop was unreasonably prolonged. He was honest with the trial court about what he was doing. He was very honest and he was very straightforward. And what he did in terms of the time duration went well beyond the time period that it would have, that it should have taken to complete this investigation into the lane-use violation. But was it unreasonably prolonged if it was really a drug investigation? The problem is, and the case law that we cite indicates that when there is some sort of minor traffic violation, that the investigation should focus on that and can only go so long in terms of time as it would take to complete the investigation into whatever the traffic violation was. I don't believe the law allows for a prolonged extension of time for a traffic stop, even if what is really happening here is a drug investigation. I think what Frupermatos admitted in the trial court was something that's in our favor. I think he admitted that the stop was unreasonably prolonged. Did you find any cases that dealt with this type of fact situation where the traffic stop was a subterfuge? If I recall correctly, and I don't have the exact quote here, I believe the Kousakis case, that's 272 Hill F3rd 159, the 3rd District case for 1995, I believe the Kousakis case. Could you give me the cite again? Sure. 272 Hill F3rd 159, 3rd District, 1995. Thank you. Thank you guys. May it please the court, counsel. My name is Matt Mueller. I represented Apelli, Nathan Benavidez at the trial court level, and I'm representing him here today. Obviously, when the briefs were written and when this case was decided, it was a different situation. Hackett, the 3rd District's ruling on Hackett was still valid. That has subsequently changed, so I think the question now before this court is, can you and will you consider the situation of duration and reasonable suspicion? I believe that this court properly can consider the duration and reasonable suspicion arguments. I believe first because, in essence, the state has opened the door in their brief of approximately 8 pages of argument 4 were dedicated to the situation of duration and reasonable suspicion in the state's brief. In addition, there are cases that indicate that this is something that you can properly consider, people versus Allen, people versus Sims. And finally, the situation that we're in here today is a little bit unusual because the judge in the trial court indicated that he would uphold the motion of caution suppressed based on Hackett, but he's going to refrain from ruling on the issue of duration and reasonable suspicion. But if he did rule, he would rule against Mr. Benavidez and Mrs. Williams. And I think that that creates an interesting situation because, in essence, we know what the trial judge is already going to rule after hearing all of the facts. But he didn't give his basis for the ruling. He said for a bunch of complicated reasons. He sure did, and I guess one of the weird situations that we're in today is all of those complicated situations are in the record. What's the harm in remanding it to the trial court to make his findings so that we do not become the driver of that? First of all, a very strongly judicial economy. If this were to be remanded to the trial court, what would end up happening is... Maybe no appeal. It may be that there's a plea or it may be that there's a finding of guilty. This is a motions case, so it's likely that there would end up being a finding of guilty. With that finding of guilty, there would be a sentencing hearing and then another appeal. That appeal would come up, we would brief it, and we would, in essence, it would be a set rule argument, and I would be here in front of you today, approximately a year from now, on something that currently is already briefed, and I'm right here in front of you. I think that that's a pretty strong argument, but even further... But the trial court could have shut that door by ruling on alternative grounds and chose not to do so. So I don't know whose judicial economy is more important, the trial courts or ours. Well, I certainly think that your judicial economy is more important, but I think that... I guess one of the aspects of why this court is particularly well poised to be able to make this ruling is, I believe, because of what is in the record, and specifically what is in the record about the background search that was conducted. I don't see any... That's in the record. It took 10 minutes to conduct the background search. That can't be changed at this point. We all know what the testimony is going to be. And People v. Harris is the, I guess, pivotal case on this point, and it states that you can do a warrant check as long as it doesn't unduly prolong the stop. And what we have here is an officer who did not conduct a warrant check. This is laid out very clearly in the record. The officer said, I can type in a name and I can type in a driver's license number and just do a warrant check, and it'll come up with whether or not there's warrants. But that's not what the officer did here. What the officer did here was he conducted a warrant check with a background check, with a FOID card check, with a driver's license information check on all three passengers. The officer here conducted a driver's license check on a backseat passenger. How any of that information would be relevant to what he's dealing with is beyond me. He could be revoked in every state in the union and it would have no effect on what he was doing. He's still allowed to be a passenger in that automobile. In addition, a FOID card check. If he has a FOID card, does that make him more of a risk or make him less of a risk? He's legally authorized to have a weapon. It's beyond reason. In addition, the full background check is important because I feel like there are some appellate court cases which use warrant check and background check pretty loosely. But in reality, what's authorized is a warrant check because a background check can come to be 500 pages, depending on what the person's history is. Police are authorized to be able to sit there and just continue looking through background information, what has happened to these people, and then delay the stop. And what happens is this situation, which clearly I believe is in violation of Harris, gets teamed up with the question that's been previously raised, what happens when there is an ulterior motive? Clearly, protection stops are allowed. There's no doubt about that. But what's not allowed is to treat the protection stop as a drug investigation. You in essence have to, and this is what I argued in front of the trial court, you have to run into the information that gives rise to reasonable suspicion. For example, you go to the door of the car and you smell marijuana. You didn't try to seek out that information, but while conducting your normal business, the officer came across it. And here, that's not what happened. Here, the officer treated this as a drug interdiction. And because of that, we're in a situation in which the officer has mixed up a lot of the stuff that's necessary for the stop with a lot of stuff that's not necessary for the stop. Specifically, if we refer to People v. Baldwin, in People v. Baldwin, we had an officer who was very honest about how long it took to accomplish what he was trying to accomplish. And because of that, this court was able to very easily determine how long it should have taken. Four and a half minutes or something along those lines. And here, we have an officer who mixes in a bunch of stuff that is unnecessary with a bunch of stuff that is necessary. And in essence, to allow him to extend the stop to be able to conduct a drug investigation would be to reward him for not diligently pursuing what he's supposed to and be punishing the officer involved for being honest and just attempting to get the stop done. Because of that, I think that clearly there's a duration problem. In terms of reasonable suspicion, there is none. The officer testified that he thought there might be a DUI, but the officer also testified that he didn't conduct anything. He didn't do a standardized field survival test, didn't do a warning motors, didn't ask for a PBT. But what's really remarkable is right towards the end of the video, you'll see what we're dealing with in terms of what the officer is testifying to. Because the officer testified that this was a DUI, but about a minute before the dog hits, the officer states on the DVD, well, you came back clear. I'm only going to write you a warning. So apparently, he's only going to write a warning when he thinks this person is DUI. It's just not credible. So you want us to look at the DVD and make a credibility determination? I think that when you combine Harris, which I believe is an entirely legal situation, and then I think that you can use the credibility of what's in the record to inform whether or not Harris has been violated. Because it is a matter of degrees. And I think that in essence, that's what would end up happening if Judge Marcellia were to change his previous ruling to, I will rule on this. This court would be in the same exact situation. It would have to look at all of the same exact facts. And that's why Harris, I believe, is such a big case on point. Because it doesn't matter what the judge ruled. This is in violation of Harris. It's irrelevant. I won't say it's irrelevant, but the judge's ruling can't change the fact that this took ten minutes and it was a search on these people's information that was conducted well beyond what was permissible pursuant to People v. Harris. Thank you. Thank you. Ms. Chowdhury, when you're ready. Regarding the issue of whether the stop was prolonged, the people did file a motion last week, and the trial judge only made a ruling on whether there was a reasonable suspicion to stop the vehicle. The trial judge did not make a ruling regarding whether the stop was unreasonably prolonged. In the Supreme Court case, People v. Rowland, it held that the appellate court should not rule on an issue not decided by the trial judge. So in this instance, the trial judge never ruled on that issue. And based on the Supreme Court case, this court should not prolong and remand the case for ruling on this issue. Thank you. We will be taking the matter under advisement and rendering a decision without undue delay. For now, we're going to take a brief recess for a panel change.